UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Action No. 1:05-cr-10124-WGY

UNITED STATES OF AMERICA,

v.

JAMES ARMSTRONG and Virgil Farese,
    Defendant.

MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT JAMES
ARMSTRONG'S MOTION TO DISMISS

Defendant James Armstrong moves for an order dismissing all counts (one through four) of the indictment for making and collecting extortionate extensions of credit (18 USC §§891 *et seq.*) and conspiracy to commit the same on the grounds that the indictment was not returned with five years of the date of the offenses as alleged. See, 18 USC §3282)(a).

The facts disclosed by the government pursuant to its obligations under *Jencks* show that Mr. Armstrong was no longer capable of participating in and could not be liable for the extension or collection of credit occurring after defendant's dismissal on April 22, 1999. To the extent that the government avers that the alleged offenses occurred differently than as charged, the indictment should be dismissed for a prejudicial variance.

A grand jury of this District returned an indictment against Mr. Armstrong on May 12, 2005. (Docket, No. 1.) A "First Superceding Indictment issued on July 14, 2005. (Docket No. 17.) The paragraphs of the indictments

1

marked "2" & "3" indicate that the acts alleged occurred at the Massachusetts Water Resources Authority jobsite at Framingham while in the employ of a joint venture known as Shea Traylor Healy. These paragraphs are incorporated by reference Counts one and three of said indictment charge the existence of a conspiracy between February 1997 and December 2000 to make (count one) and collect (count three) extortionate extensions of credit. Counts two and four of the indictment charge making (count two) and collecting (count four) extortionate extensions of credit with respect to John Doe 2 in December 2000.

James Armstrong was terminated from Shea Traylor Healy on April 22, 1999. Attached as Exhibit 1 (From Government's Trial Exhibit D). According to his grand jury testimony, Mr. Campitelli borrowed from co-defendant Virgil Farese in December 2000, or, possibly, December 1999. Attached as Exhibit 2. Accordingly, any alleged extension or collection of credit by defendants to Scott Campitelli could not have occurred with Mr. Armstrong's participation.

The government's proposed trial exhibits show that Mr. Armstrong terminated or abandoned his alleged participation in or efforts to promote the conspiracy. The Supreme Court has cautioned that jury instructions should not contain an overly restrictive view of what constitutes abandonment or withdrawal from a conspiracy:

> Affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators have generally been regarded as sufficient to establish withdrawal or abandonment. See, e. g., *Hyde v. United States*, 225 U.S. 347, 369 (1912); *United States v. Borelli*, 336 F.2d 376, 385 (2 Cir

2

>    1964). See also Note, Developments in the Law -- Criminal Conspiracy, 72 Harv. L. Rev. 920, 958 (1959). We conclude that the unnecessarily confining nature of the instruction, standing alone, constituted reversible error. If a new trial takes place, an instruction correcting this error and giving the jury broader compass on the question of withdrawal must be given.

*US v. United States Gypsum Co. et al.*, 438 U.S. 422, 464 - 465 (1978)(striking down charge that if jury found admitted exchanges of price information affected prices, then parties involved presumed as matter of law to have intended that result).

## CONCLUSION

For the reasons set forth above, this motion should be granted.

Dated this 21st day of February, 2006, at Boston, Massachusetts.

/s/ *Kevin L. Barron*
Kevin Lawrence Barron BBO550712
Attorney for James Armstrong
453 Washington Street - 5th Fl.
Boston MA 02111-1325
Tel. No. 617-407-6837
Cellular 617-407-6837
Telecopier 617-517-7711
k@lawyerbarron.com

## CERTIFICATE OF SERVICE

Counsel certifies that he has served AUSA Laura Kaplan, Esq., and Co-counsel John LaChance, Esq., electronically with a true copy of this motion by the CM/ECF of this District today on February 21, 2006. No party requires service by mail.

/s/ *Kevin L. Barron*
Kevin Lawrence Barron BBO550712

3

```
Action Code. . I              Terminated= 04/22/1999    Address Number . .   770887
Employee No. .     770887     Armstrong, James          Home Company . . .   00157
Social Sec. No  _____               Home Cost Center .   12293
Add'l EE No. . _____                                   Security Bus. Unit   12293
Name.(F/M/L)- J_____     _____               Rehire Date. . . .   03/24/1998
                                       (A,M,S,B,W) A    Orig. Hire Date. .   03/24/1998
Salary . . . . _____                                   Date Pay Starts. .   04/29/1998
Hourly Rate. . _____                                   Date Of Birth. . .   06/02/1966
Billing Rate . _____

Check Route Code . 201M                                 Job Type/Step .   1004    /  _
Tax Area (Res.). . 22                                   Pay Freq/Class  W       /  H
Tax Area (Work). . 22                                   Pay Grade/Step          /
Mart Stat(F/S/L) . S / S / S                            Workers Comp .  61W     /  _
Gender . . . . . . M                                    FLSA Exmpt Y/N  N
                                                        Benefit Group.  NONE
VDI-SDI/NonUn. . . N     U                              Union Code . .  1295
Labor Load Method.                                      EEO Job/Ethnic  007     / 01
Flat Bdn. Factor . 1.0000
Std Hrs/Year . . . _____

     F2=Taxes   F5=Basic   F6=Pay/Tax   F15=Labor   F16=DBA   F21=Auto Dep   F24=More
```

1    Q    Did you borrow any money from anyone else at
2  Local 88?
3    A    No.
4    Q    Okay. And let's, let's see if we can narrow down
5  when this was that you borrowed the money from Duke Farese?
6    A    Yup.
7    Q    When do you think it was; when was -- let me ask
8  you this.
9    A    It had to be in the fall, I would think.
10   Q    Where did you, did there come a time when you left
11 Framingham?
12   A    I left Framingham in December.
13   Q    How long were you on the job at Framingham?
14   A    I would say two years. I'd say 2000 I left.
15   Q    Okay.
16   A    December of 2000 maybe.
17   Q    Okay. And where did you go then?
18   A    I went out on workmen's comp.
19   Q    For how long?
20   A    Two months.
21   Q    What happened?
22   A    I ruptured two discs in my back.
23   Q    And then where'd you come back to?
24   A    I went to Southboro in March of 2001.
25   Q    When, in relation to when you left Framingham, did

1  you borrow that money?
2       A    It had to be, if I left in December, it had to be
3  during the fall of that year or the year before. I think it
4  was the fall of that year, so four months before, prior.
5       Q    So that would be fall of 2000?
6       A    Fall of 2000.
7       Q    Okay.
8       A    Roughly. I, it could be fall, it's either the
9  fall of 2000 or the fall of 1999.
10      Q    Okay. But it was before you went out on worker's
11 comp?
12      A    Yes, it was.
13      Q    Correct?
14      A    Yup.
15      Q    Okay. I'm going to show you what's called an
16 Employer's First Report of Injury or Fatality?
17      A    Yup.
18      Q    It's made out by the Commonwealth of
19 Massachusetts?
20      A    Yup.
21      Q    It says Scott Campitelli--
22      A    Yup.
23      Q    This is a worker's comp form, I guess?
24      A    Yup.
25      Q    It says, "Employee was opening or lifting a door

1  on"--
2      A    Yup, moran car--
3      Q    --"moran car, felt sharp pain in lower back and
4  radiating down legs.  Employee transported in ambulance to
5  Metro West"?
6      A    Yup.
7      Q    Is this the, the injury that--
8      A    I was--
9      Q    --you went out on?
10     A    Yeah, 12/11, yup.  That's it.
11     Q    And that's 12/11 of 2000?
12     A    Two thousand, yup.
13     Q    Okay.  So does that refresh your recollection as
14 to what year you took the loan from Duke Farese?
15     A    I would say it was 2000.
16     Q    Okay.
17     A    To the best of my knowledge, it was 2000, the
18 fall.
19     Q    Did you have to give urine samples for drug
20 testing--
21     A    When you start a job, you do.
22     Q    So did you do that in Framingham?
23     A    Yes, I did.
24     Q    Okay.  And what--
25     A    Every job I went to.