UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-10124(WGY) |
| | ) | |
| VIRGIL "Duke" FARESE and | ) | |
| JAMES ARMSTRONG | ) | |
| Defendants | | |

**GOVERNMENT'S MOTION FOR RECONSIDERATION**

The United States of America hereby moves this Court for reconsideration of its conditional findings relating to the Rule 29 motion filed by the defendants in the above-mentioned case and requests that pursuant to Fed. R. Crim. P. 29 (b) it reserve judgment on the motion and proceed with the trial.

At the hearing on defendants' Rule 29 motion, the government argued that once it had met its burden of proof in this loansharking conspiracy, by establishing that the loansharking conspiracy existed and that the defendants were members of said conspiracy, it was entitled to a presumption that the conspiracy continued until the defendants demonstrated otherwise, and the burden shifted to the defendants, who asserted a statute of limitations claim, to prove affirmatively that the loansharking conspiracy was terminated outside of the limitations period, or that they withdrew from the conspiracy outside of the limitations period.  See United States v. Spero, 331 F.3d 57 (2d Cir. 2003).  The Court rejected the government's argument but permitted it to move to reconsider.

As stated at the Rule 29 hearing,  this is not an indictment under the general

conspiracy section, 18 U.S.C. §371, which requires the proof of overt acts in a prosecution under that section. This is an indictment under 18 U.S.C. §§ 892 and 894 which provides both for the completed crime as well as the conspiracy and under such a statute there is no necessity to set forth overt acts in the indictment. See Singer v. United States, 323 U.S. 338, 340 (1945); United States v. Smith, 464 F.2d 1129 (2d. Cir. 1972). As such, and in the cases of non-overt act conspiracies, the statute of limitations is satisfied if the alleged conspiracy continued into the limitations period. United States v. Mavroules, 819 F.Supp. 1109 (D. Mass.1993)(Hobbs Act extortion case); United States v. Maling, 737 F.Supp. 684, 690 (D. Mass. 1990).

The government cited the case of Spero at the Rule 29 hearing which held that several other circuits have held that where a conspiracy statute does not require proof of an overt act, and where a conspiracy contemplates a continuity of purpose and a continued performance of acts, it is presumed to exist until there has been an affirmative showing that it has been terminated and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn. Id. at 59 . The same is true in the First Circuit.

In United States v. Torres Lopez, 851 F.2d 520, 525 (1st Cir. 1988), citing United States v. Coia, 719 F.2d 1120, 1124 (11th Cir. 1983), the court held that in the case of a conspiracy which does not require proof of overt acts, the conspiracy continues as long as its purposes have neither been abandoned nor accomplished. .

In United States v. May, 343 F.3d 1 (1st Cir. 2003), the First Circuit held that the court should presume that conspiracies continue to exist absent an affirmative showing of their termination and cited the First Circuit case of United States v. Elwell, 984 F.2d 1289,

1293 (1st Cir. 1993), a drug conspiracy case, which held as much.  The Elwell court adopted the ruling of the Sixth Circuit in United States v. Mayes, 512 F.2d 637 (6th Cir. 1975) which held that where a conspiracy contemplates a continuity of purpose and a continued performance of acts, it is presumed to exist until there has been an affirmative showing that it has terminated.

In United States v. Piper, 298 F.3d 47 (1st Cir. 2002), a drug conspiracy case, the court held that in order to withdraw from a conspiracy a conspirator must act affirmatively either to defeat or disavow the purposes of the conspiracy.  It further held that typically that requires either a full confession to authorities or a communication by the accused to his co-conspirators that he has abandoned the enterprise or its goals.   The Piper court stated that mere cessation of activity in furtherance of the conspiracy does not constitute withdrawal. from a conspiracy.  Id. at 53.  See also United States v. Dunn, 758 F.2d 30, 37 (1st Cir. 1985).

In Spero, 331 F.3d at 57, the court found that the loansharking activity was precisely the type of activity that contemplates a continuity of purpose and a continued performance of acts.  The court went further to note that acts of extortion and illegal debt collection inherently exude a pattern and threat of continuing criminal activity.  That court did what the government is asking this Court to do - - found that once the government had met its burden of proof by establishing that the loansharking conspiracy existed, it was entitled to a presumption that the conspiracy continued until the defendant demonstrated otherwise.  The burden in the Spero case shifted to the defendant to prove affirmatively that the loansharking conspiracy was terminated before the statute of limitations ended, or that he withdrew from the conspiracy prior to that date, in order to sustain his statute of limitations claim.

Since the government has established that the conspiracy existed[1], there is a presumption that it continued at least until the Fall of 2000 (as charged in the indictment). Thus, in order to rebut the presumption, the defendants would have to show that (1) the objectives of the conspiracy were accomplished prior to the Fall 2000 or (2) that they abandoned the conspiracy prior to that date. They have failed to make such a showing and in the absence of such proof, the conspiracy must be presumed to have continued until at least the Fall of 2000, thereby bringing the indictment within the statute of limitations.

With respect to defendant Virgil "Duke" Farese ("Farese"), there is ample evidence viewed in the light most favorable to the government to convince a jury beyond a reasonable doubt that Farese engaged in a loansharking conspiracy with defendant Armstrong and unindicted co-conspirator Mario Datillio[2] and that the conspiracy continued until at least the Fall of 2000 and beyond. First, there is the testimony of Scott Campitelli both in the grand jury (admitted as substantive evidence) and on the first day of trial that he borrowed the money from Farese in the Fall of 2000. Second, the indictment charges that the defendants

---

[1] The government is not clear on the Court's position with respect to whether the government has proven the existence of a conspiracy. All of the witnesses have testified that the defendants were "lending money together" (Ray Moncini) and that it was common knowledge that the defendants were working together and involved in a "joint venture" (Jonathan Gross). Indeed, Gross borrowed money from defendant Farese yet paid some of the debt back to defendant Armstrong. Scott Campitelli borrowed money from defendant Armstrong but believed that defendant Farese was involved in the conspiracy after seeing his (Campitelli's) name in a book. Mario Datillio collected money for defendant Farese and continued to call Campitelli after Campitelli paid the money back to him (Datillio). Thus, viewing the evidence in the light most favorable to the government there is sufficient proof of the conspiracy.

[2] Scott Colleary testified that he paid Mario Datillio back loanshark money that he borrowed from defendant Armstrong. Datillio himself testified and admitted to collecting money from several individuals for defendant Farese. As a co-conspirator, Datillio does not need to have known about the other co-conspirators or all aspects of the conspiracy. Datillio was a co-conspirator of this conspiracy.

were engaged in a loansharking business. It is undisputed (and stipulated to) that defendant Farese and unindicted co-conspirator Mario Datillio continued to be employed at the Framingham jobsite through 2002. The two worked the same shift together; Farese continued his work as Hog House attendant and life went on. There is simply no reason to believe that the conspiracy was abandoned or that Farese, Datillio or Armstrong withdrew from it. This was a conspiracy that contemplated a continuity of purpose and a continued performance of acts and is presumed to exist until there is an affirmative showing that it has terminated and its members continue to be conspirators until there's been an affirmative showing that they have withdrawn.

With respect to defendant James Armstrong ("Armstrong"), the fact that he left the Framingham jobsite in April 1999 and went to a jobsite some 25 miles away is not evidence that he abandoned the conspiracy or withdrew from it. Moreover, the date the statute of limitations begins to run is not from when Armstrong left the Framingham jobsite (April 1999) but rather from when the conspiracy was abandoned or terminated by the conspirators. Armstrong remained a member of Local 88 and continued to work in the "Sandhog" community albeit at another location with other Local 88 members. He even came back to the Framingham jobsite on one occasion and broke through the gates to administer a beating to a co-worker. Armstrong's reputation apparently lived on in Scott Campitelli who at the time he borrowed the money from Farese, in 2000, erroneously believed Armstrong was still working at Framingham although on another shift. In sum, Armstrong's mere absence from the jobsite does not constitute withdrawal or abandonment.

The court has indicated that it believes that it cannot send the case to the jury because the government's only evidence bringing the conspiracy within the statute of limitations is

Scott Campitelli who gave inconsistent trial testimony. The government respectfully disagrees. The inconsistency in Campitelli's testimony is irregular as the Court points out but is not uncommon. Juries are often faced with testimony from witnesses who contradict themselves, and they are then left to make a credibility determination. Indeed, the jury is the arbiter of the facts and the entity specifically directed to determine the facts, including credibility.

The First Circuit has held that contradiction in a witness's testimony ordinarily leaves merely a question of fact, with the jury free to decide what to accept as the truth. Dirring v. United States, 328 F.2d 512 (1st Cir.1964). In Dirring, the court recognized that there are cases where a witness's final testimony on cross-examination wipes out his contradictory testimony on direct. The court held that contradiction ordinarily leaves merely a question of fact, with the jury free to decide what to accept as the truth. Zimberg v. United States, 142 F.2d 132 (1st Cir. 1944); United States v. Bushwick Mills, Inc. 165 F.2d 198 (2d Cir. 1947).

In United States v. Hemmer, 729 F.2d 10 (1st Cir. 1984), the Court held that the jury was the appropriate arbiter of the truth, the body best suited for sifting falsehoods from facts. See also United States v. Holladay, 566 F.2d 1018 (5th Cir. 1978) (presentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury. It was for the jury to decide whether or not to credit the witness). And as noted by the Supreme Court, the credibility of testimony is to be determined by a properly instructed jury. Hoffa v. United States, 385 U.S. 293, 311 (1966).

For all of the above-stated reasons, the government submits there is sufficient evidence to prove the defendants' guilt beyond a reasonable doubt and defendants' Rule 29 motion should be denied. Further, at this time, the government requests that the Court

permit it to call witnesses at trial who the government believes will demonstrate that the witness Scott Campitelli was corruptly persuaded to alter his trial testimony changing it from 2000 to 1999. The witness was tampered with and this was done at the defendant (s) behest and on their behalf. It would be grossly unfair to the government to not allow the jury to hear what transpired between day one and day two of Scott Campitelli's testimony and what undoubtedly accounts for the contradiction in his trial testimony. After such testimony is heard, the entire case should be given to the jury.

As to the substantive counts (Counts 2 & 4), the government submits that if Campitelli's grand jury and first day trial testimony is believed by the jury, it proves the defendants' guilt beyond a reasonable doubt. These counts should also be submitted to the jury.

Finally, the government urges the Court to allow this case to go to the jury and reserve decision on defendants' Rule 29 motion.[3] If the Court substitutes its decision for that of the jury, the government will be irreparably harmed because double jeopardy will have attached. The defendant (s) misconduct will have thus carried the day. Because the evidence, in the light most favorable to the government, is sufficient to prove the defendants' guilt beyond a reasonable doubt, the defendants' motion should be denied.[4]

---

[3]As I am sure the Court is well aware, there is currently a rule change being contemplated to Rule 29 whereby all such determinations would be made after a verdict is rendered.

[4]Should the Court grant defendants' motion as to the conspiracy but allow the case to go to the jury as to the substantive counts, the government respectfully requests that it be given until Wednesday to make closing arguments. At this point, it is difficult to know what evidence will be left to argue to the jury, how much of the 404(b) evidence is admissible against Farese, and many other open matters that need to be discussed with the Court before the government can even know where to begin to prepare its' closing arguments.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _/s/ Laura J. Kaplan__

Laura J. Kaplan
Assistant U.S. Attorney